***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Taylor and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Taylor.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are subject to the Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer on November 16, 2001.
3. Plaintiff's average weekly wage on November 16, 2001, was $275.37, yielding a compensation rate of $183.58.
4. On November 16, 2001, in the course and scope of his employment with defendant-employer, plaintiff sustained an injury by accident. Defendant-insurer PMA Insurance Group paid some medical expenses. Plaintiff continued to work for defendant-employer performing his regular job with no lost time until he was terminated on January 4, 2002.
5. The parties stipulated into evidence as Stipulated Exhibit 1, plaintiff's medical records.
6. The parties stipulated into evidence as Stipulated Exhibit 2, plaintiff's responses to defendants' first set of interrogatories and request for production.
7. The parties stipulated into evidence as Stipulated Exhibit 3, defendants' responses to plaintiff's first set of interrogatories and request for production.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 69 years of age, having been born October 12, 1934. Plaintiff completed the eleventh grade. He has a long and active work history that includes working in shipping, loading trucks, and working as a tool grinder.
2. On July 9, 1999, plaintiff was hired by defendant-employer, a hotel, as a bellman. Plaintiff's job duties included opening doors, carrying luggage to rooms, transporting guests around town and to the airport, cleaning up restrooms, and various other miscellaneous duties. Plaintiff was employed with defendant-employer from July 9, 1999, through January 4, 2002.
3. On November 16, 2001, plaintiff sustained a compensable injury when he missed a step as he was exiting a hotel van and fell, injuring his lower right leg.
4. Plaintiff notified his employer and was referred to Hart Industrial Clinic on the date of injury. There, he was seen by Dr. Allen Edwards, who is board-certified in family medicine. Dr. Edwards diagnosed plaintiff with a right high ankle sprain. At the time, plaintiff's injury did not appear to be severe, and Dr. Edwards returned him to work with no restrictions.
5. Plaintiff returned to his regular duties at the Holiday Inn Select on Monday, his next scheduled workday.
6. On December 7, 2001, plaintiff returned to Dr. Edwards with decreased sensation on the lateral side of the right leg and continued pain. Dr. Edwards was of the opinion that plaintiff had an irritation of the peroneal nerve with an improving sprain.
7. Prior to plaintiff's injury, he had treated with Dr. Edwards in September and November 2000 for back pain and stiffness, and tingling and numbness into the right leg related to a back sprain. Plaintiff was found to be at maximum medical improvement for this problem on November 7, 2000.
8. Plaintiff continued to work following his injury. However, plaintiff continued to experience foot and leg pain on the right side and had to sit down to be off his foot. Prior to his injury, plaintiff could stand for two to three hours opening doors; however, he was not able to stand as long after his injury. Plaintiff also experienced swelling on the top of his foot as well as his toes.
9. Nerve conduction studies of plaintiff's right lower extremity revealed some denervation consistent with peroneal nerve compression following his compensable injury. Dr. Edwards was of the opinion that plaintiff's compensable injury was more likely than not the cause of plaintiff's peroneal nerve injury, and that plaintiff's EMG findings could not have been caused by plaintiff's prior back troubles because they involved injury to a peripheral nerve.
10. Following plaintiff's injury, he continued to perform his job duties to the satisfaction of defendant-employer. In early 2002, defendant-employer, due to a 30 to 40 percent fall in business, let at least 20 full time employees and at least 20 part time employees go. On January 4, 2002, defendant-employer terminated plaintiff's employment due to a lack of business.
11. Plaintiff received 28 weeks of unemployment benefits following his termination by defendant-employer on January 4, 2002.
12. Plaintiff last saw Dr. Edwards on January 16, 2002.
13. Dr. Edwards referred plaintiff to Dr. Mark Marchese, a neurologist, for further evaluation. On January 17, 2002, plaintiff presented to Dr. Marchese and complained of burning and sharp, stabbing pain in the right side of his right calf. Dr. Marchese noted that plaintiff's leg was giving out. A March 1, 2002, EMG/NCV revealed some improvement in the function of the right peroneal nerve. However, plaintiff continued to experience pain. Dr. Marchese referred plaintiff to Dr. William Geideman, an orthopedist, for a second opinion. By June 13, 2002, when plaintiff was referred by Dr. Marchese to Dr. Geideman, he was experiencing burning in his calf and foot, more numbness and pulling, and continued pain.
14. On June 28, 2002, plaintiff presented to Dr. Geideman and was diagnosed with idiopathic peripheral neuropathy of the right leg. Dr. Geideman treated plaintiff conservatively but plaintiff's condition did not improve. On September 4, 2002, Dr. Geideman referred plaintiff to Dr. Brown at Unifour Pain Management.
15. Plaintiff presented to Dr. Brown, a board-certified anesthesiologist and pain medicine doctor, on September 20, 2002. Dr. Brown was of the opinion that plaintiff had right lower extremity peripheral neuropathy. On September 23, 2002, October 18, 2002, November 22, 2002, March 27, 2003, and August 15, 2003, plaintiff underwent right lumbar sympathetic blocks. Following these blocks, plaintiff obtained some relief of his pain but did not experience any relief of his burning or numbness. Dr. Brown was of the opinion that plaintiff's positive response in terms of pain to the blocks but not of the burning or numbness is an indicator that chronic regional pain syndrome (RSD) is present.
16. Dr. Brown was of the opinion that plaintiff sustained a peripheral neuropathy to his right lower extremity caused by his compensable injury and that plaintiff's peroneal injury has over time turned into chronic regional pain syndrome Type II (RSD).
17. Dr. Brown was further of the opinion that plaintiff, at the very best, is only capable of performing activities which are performed while sitting down because plaintiff is unable to put any weight on his extremity and should not increase the motion of the extremity.
18. On December 6, 2002, plaintiff presented to Dr. Smith, a board-certified neurologist. After an examination and numerous tests, Dr. Smith was of the opinion that plaintiff had injury to his right peroneal nerve as a result of his November 16, 2001, compensable injury. Dr. Smith further opined that plaintiff, due to that condition, is unable to function properly, drive, or perform his usual work, and that plaintiff's symptoms increasingly indicate that he has chronic regional pain syndrome.
19. On March 24, 2003, plaintiff underwent, at his request, an independent medical evaluation performed by Dr. William VanNess III, a board-certified physical medicine and rehabilitation physician. Dr. VanNess was of the opinion that plaintiff, as a result of his November 16, 2001, compensable injury, sustained an injury to the peroneal nerve in his right foot and leg and thereafter developed chronic regional pain syndrome, Type II (RSD) secondary to his compensable injury, and the resulting peroneal nerve injury. Dr. VanNess was of the opinion that plaintiff's edema, lack of pulse, significant decrease in motion, some loss of feeling, coolness to the touch, and purple and blue discoloration were strong indications that plaintiff had chronic regional pain syndrome, Type II.
20. Dr. Van Ness was of the opinion that plaintiff could not return safely to his previous occupation because he is incapable of prolonged standing and driving.
21. Following plaintiff's termination on January 4, 2002, plaintiff searched for employment. During the summer of 2001, Mr. Phillip Fulbright, as a favor to plaintiff, allowed plaintiff to try to perform a dry cleaning delivery job. Plaintiff received no wages and merely rode with Mr. Fulbright. Mr. Fulbright got in and out of the delivery van to pick up and deliver items and climbed in the back of the van to look for the items. Both Mr. Fulbright and plaintiff were of the opinion that plaintiff was unable to physically or mentally perform this job.
22. Due to his age, education and physical condition, plaintiff has been unable to find employment or earn a wage since his January 4, 2002, termination.
23. On November 16, 2001, plaintiff sustained an admittedly compensable injury by accident to his right lower extremity.
24. As a direct and proximate result of plaintiff's compensable injury to his right lower extremity, plaintiff sustained right peroneal neuropathy that developed into complex regional pain syndrome as a direct and natural result of his compensable injury.
25. As a direct and proximate result of plaintiff's November 16, 2001 compensable injury, plaintiff has been unable to earn the same or any other wage from January 4, 2002, and continuing.
26. Plaintiff earned an average weekly wage of $275.37 per week, yielding a compensation rate of $183.58 per week.
27. Plaintiff is entitled to temporary total disability compensation at the rate of $183.58 per week for the period from January 4, 2002, and continuing.
28. Defendants are entitled to a credit for unemployment benefits received by plaintiff following his termination from employment on January 4, 2002.
29. Plaintiff is entitled to have defendants provide medical treatment for his peroneal neuropathy of the right lower extremity and his resulting complex regional pain syndrome.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On November 16, 2001, plaintiff sustained an admittedly compensable injury by accident to his right lower extremity. N.C. Gen. Stat. § 97-2(6). As a direct and proximate result of plaintiff's compensable injury to his right lower extremity, plaintiff sustained right peroneal neuropathy that developed into complex regional pain syndrome as a direct and natural result of his compensable injury. Id.
2. As a direct and proximate result of plaintiff's November 16, 2001, compensable injury, plaintiff has been unable to earn the same or any other wage from January 4, 2002, and continuing. Plaintiff earned an average weekly wage of $275.37 per week, yielding a compensation rate of $183.58 per week. Thus, Plaintiff is entitled to temporary total disability compensation at the rate of $183.58 per week for the period from January 4, 2002 and continuing. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have defendants provide medical treatment as may be reasonably required to effect a cure, give relief, or lessen the period of disability for his peroneal neuropathy of the right lower extremity and his resulting complex regional pain syndrome. N.C. Gen. Stat. §§ 97-2(19), and 97-25.
4. Defendants are entitled to a credit for unemployment benefits received by plaintiff following his termination from employment on January 4, 2002. N.C. Gen. Stat. § 97-42.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. For his temporary total disability, defendants shall pay to plaintiff weekly temporary total disability compensation in the amount of $183.58 for the period from January 4, 2002, and continuing until further Order of the Commission. Portions of this amount have accrued and shall be paid in a lump sum. All amounts contained in this paragraph shall be paid subject to an attorney's fee contained in paragraph 3 of this Award.
2. The amount defendants are required to pay pursuant to paragraph 1 of this Award shall be reduced by the amount of unemployment benefits paid to plaintiff following his January 4, 2002 termination.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded to plaintiff is hereby approved and shall be deducted by defendants from plaintiff's award and paid directly to plaintiff's counsel by paying twenty-five percent 25% of the accrued amount directly to plaintiff's counsel and by thereafter, sending every fourth check to plaintiff's counsel.
4. Defendants shall provide medical treatment to plaintiff for his compensable injury to his right lower extremity, including for his complex regional pain syndrome, so long as the same is needed to effect a cure, give relief or lessen plaintiff's disability.
5. Defendants shall pay the costs including expert witness fees, which are hereby approved in the amount of $400.00 to Dr. VanNess, and $275.00 to Dr. Edwards.
This 15th day of December 2004.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
 S/____________ BUCK LATTIMORE CHAIRMAN